**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

HEIDI PROCTOR, as next friend of,
ETHAN PROCTOR, a minor, and
HEIDI PROCTOR and BRIAN PROCTOR,
individually,

   Plaintiffs,

               Case No. 14-14824
  v.             Hon. Terrence G. Berg

PANERA, LLC (a/k/a PANERA BREAD
CAFÉ),

   Defendant.
_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. 12) AND
DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (DKT. 14)**

  Before the Court are the parties' cross-motions for summary judgment arising out of Plaintiffs' premises liability claim against Defendant Panera, L.L.C. ("Panera"). On January 14, 2016, Panera filed a motion for summary judgment. (Dkt. 12). In their response, Plaintiffs countered that they are entitled to summary judgment. (Dkt. 14). Following full briefing, the Court heard oral argument on July 15, 2016. For the reasons explained below, Panera's motion for summary judgment is **DENIED** as to Count I, and is **GRANTED** on Counts II through VI. Plaintiffs' cross-motion for summary judgment is **DENIED**.

I. **FACTUAL AND PROCEDURAL HISTORY**

On June 4, 2012, the Proctor family, Brian and Heidi Proctor and their two children, stopped for an early dinner at a Panera Bread Café restaurant located on Warren Road in Westland, Michigan, sometime between 4:30 p.m. and 5:15 p.m. (Heidi Proctor Dep., Dkt. 28, 9:2-9; 15-16; Brian Proctor Dep., Dkt. 29, 10:14). The restaurant was not busy and the Proctors promptly placed their order. (Heidi Proctor Dep., at 9:24-25-10:1-2). While Mrs. Proctor waited for the food, Mr. Proctor escorted the children to retrieve their drinks from the beverage dispenser and carried the drinks to the table. (Brian Proctor Dep., at 13:2-13).

As they approached their table, Mr. Proctor saw that it was dirty and cleaned it, wiping off salt and crumbs. (*Id.* at 11:3-16; Brian Proctor Affidavit, Dkt. 14, Ex. 3, p. 2).[1] Mr. and Mrs. Procter also noticed that other tables and booths in the immediate vicinity were not being bussed or cleaned. (*See* Brian Proctor Affidavit, at p. 2; Heidi Proctor Affidavit, Dkt. 14, Ex. 4, p. 2). Nor did Mr. Proctor see any Panera employee cleaning the tables while the family waited for their food, a time period in excess of two minutes. (Brian Proctor Affidavit, at p. 3).

The Proctors picked a table that had two chairs on one end and a cushioned booth on the other. (Heidi Proctor Affidavit, at p. 2). On the booth-side of the table, between the seat cushion and the back cushion, there was a "cavity there for debris to fall into." (Brian Proctor Dep., at 10:24-11:2). This area is called the "crumb

---

[1] Mrs. Proctor's testimony as to the condition of the table is less clear. At her deposition in October 2015, when asked whether their table was dirty, Mrs. Proctor answered, "I don't think so. I don't remember." (Heidi Dep., at 13:7-9).

2

catcher" because crumbs often fall into it. (Chad Dorton Dep., Dkt. 30, 15:22-16:25; 17:1-5).

At the time, the Proctor's son, EP, was three years old, and their daughter, AP, was age seven. As the Proctors sat down to eat, EP and AP climbed into the booth seats, with three-year-old EP entering the booth first. (Heidi Proctor Dep., at 13:1-3). The parties have provided an image of the booth the Proctors used.



(Dkt. 14, Ex. 8). About a minute after entering the booth, three-year-old EP suddenly began crying and screaming. (Heidi Proctor Dep., at 13:14-16). When Mrs. Proctor asked him what was wrong, EP raised his left hand and she saw a "needle sticking out of his finger." (*Id.* at 13:10-16) The needle was two centimeters long, about the length of a penny, had a small translucent screw cap attached to it, and was stuck in EP's left ring finger. (*Id.* at 18:1-14; *see infra*, Dkt. 16, Ex. 4).

Prior to the incident, EP's hands had been down near the seat cushion. (Heidi Proctor Dep., at 13:20-21). Mr. and Mrs. Proctor did not inspect the booth prior to sitting down, and they do not profess to know where the needle was prior to the moment that it punctured EP's finger. (*Id.* at 15:1-14; Brian Proctor Dep., 11:3-

5). The Proctors have no knowledge of how long the needle was present in the booth before the incident occurred. (Heidi Proctor Dep., at 15:1-2; Brian Proctor Dep., at 14:14-20).

Mrs. Proctor quickly pulled the needle out of EP's finger and attempted to drain the blood from his finger, fearing that the needle was contaminated. (Heidi Proctor Dep., at 20:5-8). She then walked to Panera's counter and, thinking the needle might have been a tac, asked two employees whether they used such objects at Panera, to which they responded that they had "no idea what it is." (*Id.* at 18:24-19:4). Stacey Goodman, a board-certified adult nurse practitioner and registered nurse, later identified the needle as a type that connects to a syringe and is used for administering drugs into the bloodstream. (Goodman Affidavit, Dkt. 14, Ex. 10, pp. 1-2).

After initially proceeding with their meal, Mrs. Proctor realized the urgency of the situation and they left the restaurant to go to the emergency room. (Heidi Proctor Dep., at 19:25-20:1-4). A few days later, she called the Panera location and spoke with the manager on duty. (*Id.* at 22:24-23:1). He told her that he would check into whether they had a video and follow up with Mrs. Proctor, but she never heard from him again. (*Id.* at 23:1-21).

According to Chad Dorton, an associate trainer at the Westland Panera who does not recall being present on June 4, 2012, Panera maintained its dining room by doing "travel paths" every 15-30 minutes. (Dorton Dep., at 11:4-9). During a travel path, employees clean the drink station, re-stock supplies, and check the dining

4

room tables and chairs. (*Id.* at 11:18-23). Employees who see dirty tables are trained to clean them with a rag. (*Id.* at 12:6-11). After cleaning the tables, employees use a different rag to clean dirty booths. (*Id.* at 12:24-13:1). Dorton testified that while employees wipe down the seating area of the booths, they do not normally clean the crumb catcher between the booth cushions until the closing shift. (*Id.* at 12:12-13; 15:22-16:25). Further, employees are not trained to inspect the crumb catcher during their travel paths. (*Id.* at 17:16-22). In addition, Tami Morris, the current manager of the Westland Panera, testified that employees are expected to bus tables within 2 minutes after customers depart the restaurant. (Morris Dep., Dkt. 33, at 20:23-21:4).

On December 2, 2014, Plaintiffs brought suit in Wayne County Circuit Court[2] alleging six separate tort claims, the first four on behalf of EP and the last two individually by Mr. and Mrs. Proctor. The claims include: Count I for premises liability; Count II for ordinary negligence; Count III for negligent hiring, retention, or supervision; Count IV for negligent infliction of emotional distress; Count V for loss of consortium with a child; and Count VI for economic damages stemming from the incident. (Dkt. 1, Ex. 2). On December 19, 2014, Defendant timely removed the case to this Court pursuant to diversity jurisdiction. (Dkt. 1). On January 1, 2016, Panera filed its motion for summary judgment (Dkt. 12). In their response, Plaintiffs cross-moved for summary judgment as to Count I. (Dkt. 14). On July 15,

---

[2] Wayne County Case No. 14-015354-NO.

2016, the Court held oral argument. During the hearing, Plaintiffs' counsel clarified that Plaintiffs are only proceeding on Counts I and V.

## II. ANALYSIS

### A. Legal Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* FED. R. CIV. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding v. St. Eward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The Court must determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to a jury or whether the moving party must prevail as a matter of law. *See Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in

support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

Moreover, the trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Rather, the "nonmoving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001).

When considering cross-motions for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 592 (6th Cir. 2001). Additionally, "[t]he fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts." *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991) (citations omitted).

**B. Discussion**

**1. Count I: Premises Liability**

"In this action arising under federal diversity jurisdiction, we apply the substantive law of Michigan, as the forum state." *Berrington v. Wal-Mart Stores, Inc.*, 696 F.3d 604, 607 (6th Cir. 2012). Under Michigan law, a plaintiff asserting a

premises liability claim must prove four elements: (1) defendant owed a duty to plaintiff, (2) defendant breached that duty, (3) plaintiff suffered damages, and (4) the breach was the cause of the damages suffered. *Demo v. Red Roof Inns, Inc.*, 274 F. App'x. 477, 478 (6th Cir. 2008) (quoting *Schultz v. Consumers Power Co.*, 506 N.W.2d 175, 177 (Mich. 1993)). The duty owed to a person depends upon that person's status as a visitor on the land. *Stitt v. Holland Abundant Life Fellowship*, 462 Mich. 591, 596 (2000). Michigan recognizes three common law categories for persons who enter upon the land or premises of another: (1) trespasser, (2) licensee, or (3) invitee. *Stitt*, 462 Mich. at 596, 614 (quoting *Wymer v. Holmes*, 429 Mich. 66, 71, n. 1 (1987)). The parties agree that the Proctors were invitees as customers of Panera. (Dkt. 12, p. 9, ¶ 2). The issue, however, is whether Panera breached the duty of care it owed to the Proctors as invitees. Panera maintains that Plaintiffs have failed to raise a genuine issue of fact as to whether such a breach of duty occurred.

Premises possessors have a duty to exercise reasonable care to protect invitees from "unreasonable risks of harm posed by dangerous conditions on the owner's land." *Hoffner v. Lanctoe*, 492 Mich. 450, 460 (2012). This duty is breached when the premises possessor "[1] knows or [2] should know of a dangerous condition on the premises of which the invitee is unaware and fails to fix the defect, guard against the defect, or warn the invitee of the defect." *Id.* Here, no party alleges that Panera actually knew there was a needle in the booth where EP was injured.

The question is whether Panera should have known about the presence of the needle, that is, whether Panera had constructive notice.

Constructive notice can be established "if the premises possessor should have discovered the dangerous condition in the exercise of reasonable care." *Grandberry-Lovette v. Garascia*, 303 Mich. App. 566, 573 (2014). Michigan law imputes knowledge of a dangerous condition to a premises possessor based on the failure to inspect or the inadequacy of an inspection "if the dangerous condition is of such a character or has existed for sufficient time that a reasonable premises possessor would have discovered it." *Id.* at 574-75.

The duty of exercising reasonable care "requires the premises possessor to undertake the type of inspection that a 'reasonably prudent' premises possessor would exercise under similar circumstances to protect his or her invitees." *Id.* at 578 (internal citation omitted). Determining whether a dangerous condition would be discoverable through a reasonable inspection "depends *both* on the nature of the hazard and the nature of the inspection that a reasonable premises possessor would employ under like circumstances." *Lowrey v. LMPS & LMPJ, Inc.*, No. 323049, 2015 WL 8484482 (Mich. Ct. App. Dec. 10, 2015) (emphasis in original).

To obtain summary judgment, the moving party must usually present evidence "as to what constitutes a reasonable inspection under the circumstances" and evidence that the moving party performed a reasonable inspection. *Id.* "Even where the evidence showed that the premises possessor failed to conduct a reasonable inspection, he or she could proffer evidence concerning the nature of the

hazard and demonstrate that, given the nature of the hazard, even if he or she had conducted a reasonable inspection, the hazard would not have been discovered. In both cases, the burden would then shift to the nonmoving party to come forward with evidence to establish a question of fact." *Id.*

"[W]hether the premises possessor should have discovered the dangerous condition with a proper inspection will often be a question of fact for the jury." *Grandberry-Lovette*, 303 Mich. App. at 579. Panera has provided no evidence as to what constitutes a reasonable inspection of its booths, or what type of inspection it actually performed on the booth where EP was injured. Instead, Panera argues constructive notice cannot be shown because of the nature of the needle and the lack of evidence that it was present in the booth for a sufficient time to allow Panera to become aware of it.

Panera contends that because the needle was very small (roughly the size of a penny) and had a translucent screw-on cap attached to it, a reasonably prudent property owner would not have discovered it.



(Dkt. 16, Ex. 4). Although the needle's physical size and attributes are not in dispute, the evidence in the record creates an issue of fact as to whether reasonably prudent inspection practices would have resulted in the needle's being found and

disposed of. Panera may be correct that the small, translucent screw-cap and needle would be difficult to detect by a casual inspection. However, a premises possessor cannot establish lack of constructive notice merely by showing that the hazard would not be discovered upon a casual inspection. *Grandberry-Lovette*, 303 Mich. App. at 578-79. After entering the booth, EP's hands were down near the seat cushion. (Heidi Proctor Dep., at 13:20-21). Around a minute later, a needle punctured his left ring finger. (*Id.* at 13:10-16). A needle is not the type of hazard that patrons expect to encounter at a dining establishment, unlike, for example, spilled food or drinks. Nor is the small size of the needle itself sufficient for the Court to hold that Panera did not breach its duty to inspect the premises as a matter of law. *See, e.g., Price v. Kroger Co. of Mich.*, 284 Mich. App. 496 (2009) (permitting the plaintiff to bring a premises liability action based on an injury caused by a one-inch long wire protruding from a bin near the plaintiff's ankle). Indeed, the record before the Court raises the question of whether a routine, workmanlike wiping and inspection of the seating area of the booth, in the area where EP was injured, would have resulted in the discovery of the needle or the mitigation of the hazard it created. Panera's own employees testified that they were required to wipe the booth cushions with a rag during travel paths and that they endeavored to clean tables and booths every 2 minutes. (Morris Dep., at 20:10-22). Although the breach of this policy does not equate to a breach of the duty to inspect, there is sufficient evidence for a jury to find that a reasonable inspection would have revealed the presence of the needle in Panera's booth.

Further, there is evidence in the record for the jury to conclude that the needle was present for a sufficient period for Panera to become aware of it. Mr. Proctor testified that the table was dirty and he had to wipe salt and crumbs off of it. (Brian Proctor Dep., at 11:3-16; Brian Proctor Affidavit, at p. 2). And both Mr. and Mrs. Proctor remember that the tables around the vicinity were also dirty and had food residue. (Brian Proctor Affidavit, at p. 2, Heidi Proctor Affidavit, at p. 2). The dirty tables suggest that Panera failed to properly upkeep and inspect its premises.

Moreover, Defendant cannot rely on *Gainer v. Wal-Mart Stores East, LP*, 933 F.Supp.2d 920, 926 (E.D. Mich. 2013), to show that it lacked constructive notice. In *Gainer*, the court held that the plaintiff failed to provide sufficient evidence that Walmart had constructive notice of the existence of puddle of water that caused the plaintiff to fall. *Gainer*, 933 F.Supp.2d at 932-33. *Gainer* does not provide much guidance here because, unlike a needle, the characteristics of a puddle of water can inform a determination of how long the puddle has existed. A puddle can leave evaporation marks on the floor, can create footprints indicating whether customers or workers have stepped in it, and can sometimes provide clues as to its origin. In contrast, the needle provides no physical basis for determining how long it remained in the booth. Further, in *Gainer*, it was unclear whether the hazard existed at all, whereas here, there is no question that the needle was in the booth and caused EP's injury.

For the reasons explained above, the Court finds that there is a question of fact as to whether Panera breached its duty of care to EP. Accordingly, Panera's motion for summary judgment is **DENIED** as to Count I. By the same token, although a reasonable inspection could have discovered the needle, there is also evidence in the record for the jury to conclude that a reasonable inspection would not have done so. Accordingly, Plaintiffs' motion for summary judgment is also **DENIED** as to Count I.

### 2. Counts II and III: Ordinary Negligence and Negligent Hiring[3]

"Michigan law distinguishes between claims arising from ordinary negligence and claims premised on a condition of the land." *Buhalis v. Trinity Continuing Care Servs.*, 296 Mich. App. 685, 692 (2012). Where a plaintiff's injury arises out of a hazard on the land, the action is one of premises liability and not ordinary negligence. *Id.* This is true even when the defendant created the hazardous condition on the land. *Jahnke v. Allen*, 308 Mich. App. 472, 476 (2014)

A plaintiff may bring an ordinary negligence claim in addition to a premises liability claim where there is a "separate claim grounded on an independent theory of liability based on the defendant's conduct." *Laier v. Kitchen*, 266 Mich. App. 482, 493 (2005) (independent grounds for ordinary negligence where the plaintiff alleged that the defendant negligently operated a tractor, leading to his injuries).

---

[3] During oral argument on these motions, Plaintiff indicated that it was only proceeding on Counts I and V, thus rendering the Court's disposition of these motions pertaining to Count II, III, and IV somewhat unnecessary. However, in the absence of a motion to amend the Complaint or to withdraw these claims, the Court will address the pending summary judgment arguments relating to them.

Plaintiffs failed to respond to Panera's motion for summary judgment as to these counts, thus waiving any argument against dismissal. But even considered on the merits, the record fails to raise a genuine issue of material fact as to Count II for ordinary negligence and Count III for negligent hiring and training. Both of these Counts revolve around the injury that EP sustained as a result of getting pricked by the needle in Panera's booth. These allegations claim injury caused by a dangerous condition on Defendant's property and therefore they amount to a premises liability action. There is no allegation that Defendants engaged in certain conduct which fell below a reasonable standard of care. There is no allegation that Panera committed an independent tort apart from the failure to detect a hazard on its premises.

Accordingly, Panera's motion for summary judgment is **GRANTED** as to Counts II and III.

### 3. Count IV: Negligent Infliction of Emotional Distress

Although Michigan law recognizes the tort of negligent infliction of emotional distress, this tort has "been uniquely limited to 'bystander recovery' actions." *Hayes v. Langford*, No. 280049, 2008 WL 5158896, at *3 (Mich. Ct. App. Dec. 9, 2008). To the extent that a plaintiff is claiming negligent infliction of emotional distress based on a tort allegedly committed against the plaintiff, the claim is non-actionable. *See id.* Here, EP is bringing the claim for negligent infliction of emotional distress because of his injury. This is not a bystander action. Accordingly, Panera's motion for summary judgment is **GRANTED** as to Count IV.

### 4. Count V: Loss of Consortium

The Michigan Supreme Court has ruled that Michigan "does not recognize a parent's action for loss of a child's society and companionship" and that "any decision to further extend a negligent tortfeasor's liability for consortium damages should be determined by the Legislature." *Sizemore v. Smock*, 430 Mich. 283, 285 (1988); *see also In re Estate of Verploegh*, No. 303296, 2012 WL 1623525, at *4 (Mich. Ct. App. May 8, 2012) ("Michigan common law does not recognize a parent's action for loss of a child's society and companionship when a child has been negligently injured."); *Jenks v. Brown*, 219 Mich. App. 415, 420 (1996) ("An injury to a child does not give the child's parent a cognizable claim for loss of consortium or society and companionship.").

Mr. and Mrs. Proctor's claim of loss of consortium with their son EP is therefore non-cognizable under Michigan law. Panera's motion for summary judgment is **GRANTED** as to Count V.[4]

### 5. Count VI: Economic Damages

Plaintiffs' final claim (Count VI) is for economic damages resulting from Panera's allegedly tortious actions or omissions. This is not a substantive cause of action. If Plaintiffs prove they are entitled to economic damages, they may be recovered as damages arising from a finding of liability on their substantive legal

---

[4] Although Panera did not explicitly challenge Count V in its motion for summary judgment, it did seek summary judgment in its reply brief. Given that Michigan law bars Plaintiffs' common law claim for loss of consortium, Plaintiffs' claim must fail.

claims. Accordingly, Panera's motion for summary judgment as to Count VI is **GRANTED**.

### III. CONCLUSION

For the reasons explained above, Panera's motion for summary judgment is **DENIED** as to Count I and **GRANTED** as to Counts II through VI. Plaintiffs' motion for summary judgment is **DENIED** as to Count I.

**SO ORDERED.**


Dated: August 9, 2016                    s/Terrence G. Berg
                                         TERRENCE G. BERG
                                         UNITED STATES DISTRICT JUDGE



**Certificate of Service**

I hereby certify that this Order was electronically submitted on August 9, 2016, using the CM/ECF system, which will send notification to all parties.

                                         s/A. Chubb
                                         Case Manager